**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| AMERICAN PRECISION INDUSTRIES, INC., | : : : | |
| Plaintiff, | : : | **Dkt. No. 1:14-cv-01050-RJA-HKS** |
| vs. | : : : | |
| FEDERAL INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, and NORTH RIVER INSURANCE COMPANY, | : : : : : | |
| Defendants. | : : | |

**PLAINTIFF AMERICAN PRECISION INDUSTRIES, INC.'S**
**BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**McCarter & English, LLP**
Worldwide Plaza
825 Eighth Ave., 31st Fl.
New York, NY 10019
Phone: 212.609.6800
Fax: 212.609.6921
Attorneys for Plaintiff
American Precision Industries, Inc.

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................ iv

PRELIMINARY STATEMENT ..........................................................................................1

FACTUAL BACKGROUND .................................................................................................2

    A.    The Insurers' Primary Liability Policies ...............................................................2

    B.    Corporate Background Relevant to the Asbestos Litigation
        and Insurance Coverage ..........................................................................................3

    C.    The Asbestos Lawsuits .............................................................................................4

PROCEDURAL HISTORY ...................................................................................................5

ARGUMENT ...........................................................................................................................6

POINT I

SUMMARY JUDGMENT STANDARD ..............................................................................6

POINT II

THE PRIMARY POLICIES REQUIRE THE INSURERS TO DEFEND THE
ASBESTOS LAWSUITS AND FUND ALL DEFENSE FEES AND COSTS .............................6

    A.    The Insurers Have a Duty to Defend the Asbestos Lawsuits ...................................7

    B.    The Insurers Cannot Avoid the Duty to Defend by Ignoring
        Facts Outside the Asbestos Pleadings ....................................................................9

    C.    The Insurers Collectively Must Fund All Defense Fees and
        Costs Incurred in the Asbestos Lawsuits ..............................................................13

POINT III

IN THE ALTERNATIVE, FEDERAL, AT A MINIMUM, HAS A DUTY TO
DEFEND THE ASBESTOS LAWSUITS AND FUND ALL DEFENSE FEES AND COSTS ..14

    A.    API AirTech, API Basco, and API Heat Transfer Fall Within the
        Coverage Grant of the "Subsidiaries or Newly Acquired or Formed
        Organizations" Provision ......................................................................................15

B.     Federal Cannot Prove the Exclusion for "Other Similar Insurance Available" Applies.................................................................................................16

POINT IV

THE INSURERS MUST CONTRIBUTE TOWARD API'S PAST AND FUTURE ASBESTOS SETTLEMENTS AND JUDGMENTS....................................................17

CONCLUSION.............................................................................................................................18

ME1 29463792v.5

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allianz Ins. Co. v. Lerner*,
  416 F.3d 109 (2d Cir. 2005)...................................................................................7, 9

*Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*,
  No. 19-cv-4212 (LJL), 2020 WL 1989399 (S.D.N.Y. 2020) ....................................5

*Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*,
  No. 5:06-CV-1117, 2010 WL 1257943 (N.D.N.Y. Mar. 25, 2010) ..................14, 15

*High Point Design, LLC v. L.M. Ins. Corp.*,
  911 F.3d 89 (2d Cir. 2018)..........................................................................................9

*Knight v. U.S. Fire Ins. Co.*,
  804 F.2d 9 (2d Cir. 1986).....................................................................................6, 17

*Olin Corp. v. Century Indem. Co.*,
  522 Fed. App'x 78 (2d Cir. 2013)..............................................................................13

*Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*,
  73 F.3d 1178 (2d Cir. 1995)......................................................................................17

*U.S. Fid. & Guar. Co. v. Exec. Ins. Co.*,
  893 F.2d 517 (2d Cir. 1990)........................................................................................9

*United Specialty Ins. Co. v. CDC Housing, Inc.*,
  233 F. Supp. 3d 408 (S.D.N.Y. 2017)..........................................................................7

**State Cases**

*Am. Empire Surplus Lines Ins. Co. v. W. Am. Ins. Co.*,
  No. 116334/07, 2008 N.Y. Misc. LEXIS 10724 (N.Y. Sup. Ct. Dec. 30, 2008)....................14

*Chatham Corp. v. Argonaut Ins. Co.*,
  334 N.Y.S.2d 959 (Sup. Ct. 1972) ............................................................................11

*City of N.Y. v. Wausau Underwriters Ins. Co.*,
  145 A.D.3d 614 (1st Dep't 2016) ........................................................................11, 13

*Commercial Pipe & Supply Corp. v. Allstate Ins. Co.*,
  36 A.D.2d 412 (4th Dep't 1971), *aff'd* 30 N.Y.2d 619 (1972) ..................................9

*Cont'l Cas. Co. v. Rapid-Am. Corp.*,
  80 N.Y.2d 640 (1993) ..........................................................................................13, 17

*Cragg v. Allstate Indem. Corp.*,
   17 N.Y.3d 118 (2011) ...............................................................................16

*Essex Ins. Co. v. Grande Stone Quarry, LLC*,
   82 A.D.2D 1326 (3d Dep't. 2011) ............................................................16

*Fitzpatrick v. Am. Honda Motor Co.*,
   78 N.Y.2d 61 (1991) ................................................................... 7, 10-13

*Greater N.Y. Mut. Ins. Co. v Clark*,
   205 A.D.2d 857 (3d Dep't 1994) ..............................................................16

*Seaboard Sur. Co. v. Gillette Co.*,
   64 N.Y.2d 304 (1984) ...............................................................................16

*Sucrest Corp. v. Fisher Governor Co.*,
   371 N.Y.S.2d 927 (Sup. Ct. 1975) .............................................................9

*Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*,
   98 N.Y.2d 435 (2002) ............................................................................7, 8

*Travelers Cas. & Sur. Co. v. Alfa Laval, Inc.*,
   100 A.D.3d 451 (1st Dep't 2012) .............................................................13

*White v. Cont'l Cas. Co.*,
   9 N.Y.3d 264 (2010) .................................................................................16

## Rules

Fed. R. Civ. P. 56(a) .......................................................................................6

ME1 29463792v.5

# PRELIMINARY STATEMENT

Plaintiff American Precision Industries, Inc. ("API") has a contractual right to insurance coverage for hundreds of asbestos lawsuits alleging bodily injury from products manufactured by API. Yet, the insurance companies that sold API this insurance, defendants North River Insurance Company ("North River"), Fireman's Fund Insurance Company ("FFIC"), and Federal Insurance Company ("Federal") (collectively, the "Insurers"), have improperly and without basis refused to defend or indemnify API for any of the asbestos lawsuits. The Insurers cannot legitimately dispute that the underlying asbestos lawsuits, which seek damages for "bodily injury" which API would be held "legally obligated to pay," fall squarely within the coverage grants of their policies. The Insurers should collectively cover 100% of the defense costs and contribute towards all settlements, but they have not paid a penny toward the asbestos lawsuits.

The Insurers turn a blind eye to the facts and ignore long-standing New York law in denying coverage. The Insurers attempt to hold API hostage to errors in the underlying asbestos pleadings which name as defendants former subsidiaries of API instead of API itself. But the Insurers know that the former subsidiaries have no liability for these asbestos lawsuits. The subsidiaries were formed *after* the underlying claimants allegedly were exposed to asbestos from API's products, and API never transferred any liability to these subsidiaries. There is no dispute that API retained the liability for these asbestos lawsuits. Nevertheless, the Insurers refuse to consider these known facts; instead, they violate nearly fifty years of New York law prohibiting insurers from ignoring known facts outside the four corners of the complaint to deny coverage. Inartful pleading in the underlying cases does not allow the Insurers to duck their contractual coverage obligations. Because API retains the liability for these claims, the Insurers must defend and indemnify API.

1

Federal also must defend because one of its policies covers as named insureds those very same former subsidiaries of API named as defendants in the asbestos lawsuits. Because API created these former subsidiaries during one of the Federal policy periods, they are named insureds under the express terms of that Federal policy. Therefore, even if North River and FFIC do not have defense obligations, Federal still would be responsible for providing a complete defense to the underlying asbestos claims.

## FACTUAL BACKGROUND

**A.    The Insurers' Primary Liability Policies**

API seeks coverage for the asbestos lawsuits under primary comprehensive general liability policies the Insurers sold to API (collectively, the "Primary Policies"). Specifically, North River sold to API the following three-year primary policy:

| Number | Period | Per Occurrence Limit | Annual Aggregate Limit |
|---|---|---|---|
| ML-208455 | 12/31/1974-12/31/1977 | $300,000 | $300,000 |

Certification of Adam J. Budesheim ("Budesheim Cert."), Ex. "A." FFIC sold the following four consecutive primary policies covering December 31, 1985 through April 1, 1989:

| Number | Period | Per Occurrence Limit | Annual Aggregate Limit |
|---|---|---|---|
| MXC 800705191 | 12/31/1985-12/31/1986 | $1,000,000 | $1,000,000 |
| MXC 800705191 | 12/31/1986-4/1/1987 | $1,000,000 | $1,000,000 |
| MXC 80079133 | 4/1/1987-4/1/1988 | $1,000,000 | $1,000,000 |
| MXC 80142927 | 4/1/1988-4/1/1989 | $1,000,000 | $1,000,000 |

Dkt. No. 33-5 at 3. Federal sold the following five consecutive primary policies covering the period from April 1, 1992 through April 1, 1997:

| Number | Period | Per Occurrence Limit | Annual Aggregate Limit |
|---|---|---|---|
| 3530-67-00 | 4/1/1992-4/1/1993 | $1,000,000 | $2,000,000 |
| 3530-67-00 | 4/1/1993-4/1/1994 | $1,000,000 | $2,000,000 |
| 3530-67-00 | 4/1/1994-4/1/1995 | $1,000,000 | $2,000,000 |

2

| 3530-67-00 | 4/1/1995-4/1/1996 | $1,000,000 | $2,000,000 |
|---|---|---|---|
| 3530-67-00 | 4/1/1996-4/1/1997 | $1,000,000 | $2,000,000 |

Dkt. No. 33-10 at FED04675-FED04676; No. 33-11 at FED04704 and FED04707; No. 33-12 at FED04743 and FED04752; No. 33-13 at FED04798; and No. 33-14 at FED04883. Each of the Primary Policies obligates the insurer to defend its insured and provides that defense costs are paid in addition to, and do not erode, the policy limits. None of the Primary Policies contains an asbestos exclusion.

**B.      Corporate Background Relevant to the Asbestos Litigation and Insurance Coverage**

API incorporated under New York law in 1947 and operated as a manufacturer of industrial equipment, including, among other things, heat transfer products. Dkt. No. 33-7 at No. 1. During the ensuing decades, API acquired other companies and formed numerous divisions and brands, including the Basco and Air Technologies divisions, which were made part of API's Heat Transfer Group. Budesheim Cert., Ex. "B" at 116:22-117:8; Ex. "C." These brands and divisions were not separate corporate entities; they existed as part of API. Budesheim Cert., Ex. "B" at 87:16-22. For example, after API acquired a company called Basco Inc. in the early 1960s, API merged Basco Inc. into itself in 1966 and, thereafter, operated Basco as a division of API (not as a subsidiary or other separate corporate entity). *See, e.g.*, Budesheim Cert., Ex. "C."

During September of 1996, API formed three new wholly-owned subsidiary corporations and gave these entities names very similar to its existing brands, divisions, and groups: (1) API Airtech Inc. ("API Airtech"); (2) API Basco Inc. ("API Basco"); and (3) API Heat Transfer Inc. ("API Heat Transfer"). Budesheim Cert., Ex. "B" at 117:9-16; Dkt. No. 33-7 at Nos. 2-4. In early 1997, API conveyed assets to API Airtech and API Basco in exchange for all of their outstanding shares of stock to establish them as operating companies. Dkt. No. 33-7 at Nos. 5 and 8. Critically, API never transferred any liabilities to API Airtech or API Basco in connection

3

with those transactions or at any time thereafter. Dkt. No. 33-7 at Nos. 6 and 9. These new subsidiary companies began operation in 1997 with a slate clear of any liabilities relating to the past operations or products of API.

Subsequently, API Heat Transfer, which also was a subsidiary of API at the time, purchased from API all of the shares of API Airtech, API Basco, and another entity named API Ketema Inc. ("API Ketema"), all of which became subsidiaries of API Heat Transfer. Dkt. No. 33-7 at No. 13. API Heat Transfer then merged into API Airtech, with the surviving company adopting the name API Heat Transfer. Dkt. No. 33-7 at 14-15. At the end of 1998, API Basco, API Ketema, and another company named API Schmid-Bretten Inc. merged into API Heat Transfer. Dkt. No. 33-7 at No. 16. In 2002, API sold API Heat Transfer to a third party. Dkt. No. 33-7 at No. 22. During the six years from the creation of API AirTech, API Basco, and API Heat Transfer in 1996 to their sale in 2002, API transferred only assets, not liabilities, to the three entities. Those three entities never had any liability for product claims arising from products manufactured before their formation in 1996, neither while they were subsidiaries of API nor after they were sold to a third party. The Insurers expressly acknowledged in briefing to this Court that API did not transfer the asbestos liabilities to any of its three subsidiaries:

> It is undisputed that API did not transfer any asbestos liabilities to
> Heat Transfer, API AirTech, or API Basco.

Dkt. No. 33-1 at 2; Dkt. No. 35, and Dkt. No. 36. The asbestos liabilities remained with API.

## C. The Asbestos Lawsuits

Since 2003, more than seven hundred asbestos lawsuits have been filed alleging bodily injury resulting from exposure to products manufactured or sold by API. Dkt. No. 33-7 at No. 31. Although the alleged dates of exposure to asbestos vary from lawsuit to lawsuit, all of the lawsuits allege bodily injury from exposure to asbestos prior to 1996. Because API Heat

4

Transfer, API Basco, and API Airtech were not formed until late 1996, their very existence post-dates the claimants' alleged exposure to asbestos. Further, because API never transferred any liabilities to the three entities, they do not, and never did, have any liability for claims arising out of products manufactured and sold by API before 1996. Nevertheless, plaintiffs in the underlying asbestos cases mistakenly name as defendants API Heat Transfer, API Basco, and API Airtech, instead of API (likely because of the similarity of these entities' names to the former brands and divisions of API), but they allege injury from API products for which API retained the liability. Budesheim Cert., Ex. "D" at No. 32.

As API's corporate representative, Dr. Timothy Greene, Ph.D., explained:

> A. So complaints in asbestos cases are highly imperfect… so my understanding is, they got their product facts right. Their captioning may not reflect it, but they got their product facts right.
>
> Q. So they may not be suing the right defendants; is that what you're saying?
>
> A. Entirely possible. In fact, that's not – that's frequent across all of these 740 plus cases that we've had so far in API. Is that, it's a never ending variety of ways to try and name the company. But the facts of the claim and the products that the plaintiff or the decedent were involved with, that's determinative of who has the liability.

Dkt. No. 37-1 at 187:8-188:1. *See Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, No. 19-cv-4212 (LJL), 2020 WL 1989399, *4 (S.D.N.Y. 2020) (stating "deposition testimony can provide an insurer with knowledge of facts establishing a reasonable possibility of coverage." (internal quotation marks omitted)).

**PROCEDURAL HISTORY**

API filed this lawsuit against the Insurers on December 16, 2014. Dkt. No. 1. In its Complaint, API seeks a declaratory judgment regarding its rights and the Insurers' obligations with respect to the asbestos lawsuits. *Id.* Pursuant to the Court's order, the parties engaged in

5

mediation before Hugh M. Russ, III, Esq., but did not reach a settlement. Dkt. Nos. 15, 17, 19, and 20. The parties subsequently engaged in fact and expert discovery, which closed on February 25, 2019. Dkt. No. 71. On April 29, 2020, the Court established July 10, 2020 as the deadline to file dispositive motions. Dkt. No. 86.

## ARGUMENT

### POINT I

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) permits parties to move for summary judgment, which courts must grant as long as "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Although courts draw factual inferences in favor of the non-moving party, that party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11-12 (2d Cir. 1986). Because no genuine issues of material fact exist, the Court should grant summary judgment in favor of API as a matter of law.

### POINT II

### THE PRIMARY POLICIES REQUIRE THE INSURERS TO DEFEND THE ASBESTOS LAWSUITS AND FUND ALL DEFENSE FEES AND COSTS

Under the Primary Policies, each of the Insurers has a duty to provide a complete defense for the underlying asbestos lawsuits. The Insurers collectively must fund all past and future defense fees and costs incurred in connection with the asbestos lawsuits. The underlying lawsuits clearly are covered by the Primary Policies as they allege bodily injury from exposure to asbestos from products manufactured and sold by API and for which API retained the liabilities; that most of the complaints erroneously name API Heat Transfer, API Airtech, or API Basco

6

does not relieve the Insurers of their duty to defend because they have actual knowledge that API retained the liabilities arising from products it manufactured before 1997.

## A.     The Insurers Have a Duty to Defend the Asbestos Lawsuits

Under New York law, "an insurer's duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002).  Because the duty to defend is broader than the duty to indemnify, a primary insurer generally must defend any claim for which the insurer would have to indemnify the insured, *i.e.*, cover a settlement or judgment against the insured.  Indeed, the duty requires insurers to defend actions regardless of merit as long as they seek damages *potentially* within coverage.  *United Specialty Ins. Co. v. CDC Housing, Inc.*, 233 F. Supp. 3d 408, 412 (S.D.N.Y. 2017).  An insurer can only refuse to defend if "there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (internal brackets and citations omitted).

The insurance policy itself "must always remain a primary point of reference" in determining the duty to defend.  *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 68 (1991). North River and FFIC agreed to:

> . . . pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence . . .

Budesheim Cert., Ex. "A"; Ex. "E" at FFIC-API-0054033.  Likewise, Federal agreed that:

> We will pay any damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of:

> bodily injury or property damage caused by an occurrence; or
> personal injury or advertising injury to which this insurance
> applies.

Dkt. No. 33-10 at FED24822. Thus, the Primary Policies cover claims seeking "damages" for

"bodily injury" caused by an occurrence and for which API would become "legally obligated to

pay."

General liability policies typically cover claims such as asbestos bodily injury claims, and

the Primary Policies here are no exception. The Primary Policies cover the underlying asbestos

claims because those claims seek damages based on allegations of bodily injury arising from

products containing asbestos. *E.g.*, Budesheim Cert., Ex. "F." Because API retained liability for

claims arising out of pre-1996 products, and because all the lawsuits allege exposure to asbestos

before 1996, these lawsuits clearly allege damages from bodily injury which API would be

"legally obligated to pay." Thus, there is a "reasonable possibility of recovery under the policy"

by API for those claims. *Town of Messena*, 98 N.Y.2d at 443.

Under New York law, *see, e.g.*, *id.*, and the plain language of the Primary Policies, the

Insurers have a duty to defend suits or claims seeking damages covered by the policies. The

North River and FFIC policies state:

> . . . *the Company shall have the right and duty to defend any suit*
> *against the insured seeking damages on account of such bodily*
> *injury* or property damage, even if any of the allegations are
> groundless, false, or fraudulent . . .

Budesheim Cert., Ex. "A"; Ex. "E" at FFIC-API-0054033 (emphasis added). Likewise, the

Federal policy states:

> *We will defend any claim or suit against the insured seeking such*
> *damages.* We will pay in addition to the applicable limit of
> insurance the defense expense.

Dkt. No. 33-10 at FED24822 (emphasis added).  Because, as noted above, the asbestos claims

seek damages for bodily injury for which API would be legally obligated to pay, those claims

fall within the coverage of the Primary Policies and trigger the Insurers' duties to defend.

**B.**     **The Insurers Cannot Avoid the Duty to Defend by Ignoring Facts Outside the Asbestos Pleadings**

That the underlying asbestos lawsuits name as defendants the former subsidiaries of API

– API Airtech, API Basco, or API Heat Transfer – rather than API itself, does not affect the

Insurers' duty to defend.  As the Second Circuit has stated repeatedly, New York law requires

insurers to look to facts within their actual knowledge, outside the four corners of the complaint,

when assessing whether they have a duty to defend.  *High Point Design, LLC v. L.M. Ins. Corp.*,

911 F.3d 89, 96-97 (2d Cir. 2018); *Lerner*, 416 F.3d 109 at 115; *U.S. Fid. & Guar. Co. v. Exec.*

*Ins. Co.*, 893 F.2d 517, 519 (2d Cir. 1990).  Indeed, nearly 50 years ago, the New York Supreme

Court, Appellate Division, concluded that "[w]here, as here, the insurer has knowledge of facts

which potentially bring the claim within the coverage of the policy, it has a duty to defend even

though the allegations of the complaint fail sufficiently to allege all of the facts requisite to do

so." *Commercial Pipe & Supply Corp. v. Allstate Ins. Co.*, 36 A.D.2d 412, 415 (4th Dep't 1971),

*aff'd* 30 N.Y.2d 619 (1972); *see also Sucrest Corp. v. Fisher Governor Co.*, 371 N.Y.S.2d 927,

937-38 (Sup. Ct. 1975) ("[W]here the complaint alleges facts without the coverage of the policy,

but the carrier has knowledge of facts indicating coverage, the insurer is to be guided, not

exclusively by the allegations of the complaint, but also by the facts known to it.").

Nearly 30 years ago, the New York Court of Appeals confirmed that under New York

law, an insurer must "provide a defense when [the insurer] has actual knowledge of facts

establishing a reasonable possibility of coverage."  *Fitzpatrick*, 78 N.Y.2d at 67.  The court

explained that "allegations in the complaint may provide the significant and usual touchstone for

9

determining whether the insurer is contractually bound to provide a defense," but making the terms of the complaint controlling "would allow the insurer to construct a formal fortress of the third party's pleadings thereby successfully ignoring true but unpleaded facts within its knowledge that require it conduct the insured's defense." *Id.* at 68 (internal quotation marks omitted).

Although the duty to defend is often analyzed in terms of the "four corners of the complaint" rule (*i.e.*, the allegations of the complaint, even if groundless, false, or fraudulent, establish an insurer's duty to defend), this rule establishes the floor, not the ceiling, for an insurer's duty to defend. *Fitzpatrick*, 78 N.Y.2d at 66 ("[A]n insurer's duty to defend is *at least broad enough* to apply when the 'four corners of the complaint' rule suggests the reasonable possibility of coverage." (emphasis added)). The court explained that "the duty to defend derives, in the first instance, not from the complaint drafted by a third party, but rather from the insurer's own contract with the insured." *Id.* at 68. The obligation of the insurer to consider facts within its actual knowledge when assessing its duty to defend "flows naturally" from this contractual relationship. *Id.* The court rejected "wooden application" of the "four corners of the complaint" rule that would allow the insurer "to shield itself from the responsibility to defend despite its actual knowledge that the lawsuit involves a covered event." *Id.* at 66.

The holding of *Fitzpatrick* confirms that the Insurers must defend the underlying asbestos claims. The Insurers have actual knowledge of, and do not dispute, that API did not transfer its liabilities for the underlying asbestos claims to the former subsidiaries. The Insurers have actual knowledge that the former subsidiaries, which did not exist until 1996, do not have liability for these asbestos bodily injury claims. The Insurers have actual knowledge that the underlying asbestos claimants allege exposure to asbestos from API products prior to 1996, and that API

10

retained these liabilities. The Insurers have actual knowledge of facts that bring the underlying asbestos claims within the coverage provided by the terms and conditions of the Primary Policies. Thus, the Insurers' actual knowledge requires them to defend these asbestos claims.

In applying the extrinsic facts rule to insurance disputes, New York courts have found that the failure to name the insured a defendant in the underlying lawsuit does not deprive the insured of coverage when facts known to the insurer establish that the insured is the proper focus of the claimant's allegations, despite deficiencies in the pleadings. *See City of N.Y. v. Wausau Underwriters Ins. Co.*, 145 A.D.3d 614, 618-19 (1st Dep't 2016) ("It is of no moment that Hellman, the named insured on the Wausau policy, was not named in the complaint."); *Chatham Corp. v. Argonaut Ins. Co.*, 334 N.Y.S.2d 959, 960-61 (Sup. Ct. 1972) ("[T]he failure to include [insured] as a defendant in the third-party action or to name it in the pleadings is not fatal, provided it can be ascertained that [insured], rather than some other party, is the subject of the complaint brought by the third-party plaintiff."). Significantly, *Fitzpatrick* itself involved a failure to identify the proper defendant in the underlying complaint, and the Court of Appeals found the insurer still had a duty to defend. An examination of the facts of *Fitzgerald* makes clear that the factual scenario and the court's reasoning are directly analogous to the obligations of the Insurers here to defend API.

In *Fitzpatrick*, the claimant filed suit for the wrongful death of her husband that occurred while he operated a three-wheel all-terrain vehicle. *Fitzpatrick*, 78 N.Y.2d at 63. The claimant incorrectly alleged Frank Moramarco owned the vehicle and had given her husband permission to use it. *Id.* In reality, Moramarco was "an officer, shareholder and director" of an entity called Cherrywood Landscaping, Inc. ("CLI"), which owned the vehicle. *Id.* The claimant named Moramarco as a defendant, but not CLI. *Id.*

11

CLI held a liability insurance policy, which also covered Moramarco, but only as an "executive officer, director or stockholder" while acting within his duties. *Id.* at 63-64. The insurer, however, denied coverage to Moramarco because the "complaint did not name CLI, and Moramarco, the named defendant, was not insured as an individual." *Id.* at 64. In other words, by failing to name CLI, the insurer contended the complaint did not allege Moramarco acted within his duties for CLI. *Id.* In the lawsuit that followed, the trial court denied the insurer's motion to dismiss, but the New York Appellate Division reversed and found no coverage because the complaint, which it considered determinative, did not identify CLI. *Id.* at 64-65.

Applying the extrinsic facts rule, the Court of Appeals noted that, "had the complaint correctly identified Moramarco as an officer and/or shareholder of the insured CLI, he would have unquestionably been covered for this lawsuit…" *Id.* at 69. "To deny Moramarco an insurance-company sponsored defense under these circumstances merely because the attorney for the plaintiff in the main action accidentally mischaracterized Moramarco's role would be to afford the insurer an underserved windfall at the expense of its insured." *Id.* The Court of Appeals concluded that "invocation of the [four corners of the complaint] rule here and in analogous cases leads to an unjust result, since it exalts form over substance and denies an insured party the benefit of the 'litigation insurance' for which it has paid." *Id.* at 70. The rule, instead, is that an insurer must "provide a defense where, notwithstanding the complaint allegations, underlying facts made known to the insurer create a 'reasonable possibility that the insured may be held liable for some act or omission covered by the policy.'" *Id.* at 70 (quoting *A. Meyers & Sons Corp. v. Zurich Am. Ins. Grp.*, 74 N.Y.2d 298, 302 (1989)). *Accord Wausau Underwriters*, 145 A.D.3d 614.

12

Because they know API retained the liability for the asbestos lawsuits, the insurers cannot hide behind the "formal fortress" of the asbestos claimants' factually incorrect pleadings. The asbestos claimants name API AirTech, API Basco, and/or API Heat Transfer as defendants, rather than API, because they are "unaware of the true underlying facts" regarding API's retention of the liabilities. *Fitzpatrick*, 78 N.Y.2d at 68. If the asbestos claimants had named API as a defendant, the Insurers undoubtedly would have to defend. As *Fitzpatrick* makes clear, permitting the Insurers to avoid coverage here because underlying plaintiffs did not correctly identify API as the defendant would result an "unjust result" and an "underserved windfall" for the Insurers.

## C. The Insurers Collectively Must Fund All Defense Fees and Costs Incurred in the Asbestos Lawsuits

Under New York law, any triggered primary liability policy is liable for the entire cost of defending the insured for long-tail liabilities, such as those allegedly resulting from asbestos exposures. In *Continental Casualty Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 655-56 (1993), the New York Court of Appeals held:

> …the duty to defend is broader than the duty to pay, requiring each insurer to defend if there is an asserted occurrence covered by its policy and the insured should not be denied initial recourse to a carrier merely because another carrier may also be responsible. That is the "litigation insurance" the insured has purchased.

New York courts, both state and federal, have repeatedly applied the holding from *Rapid-American*, requiring any triggered primary insurer to fund the insured's entire defense. *See Olin Corp. v. Century Indem. Co.*, 522 Fed. App'x 78, 80 (2d Cir. 2013) (affirming district court's refusal to allocate defense costs to the policyholder for uninsured periods); *Travelers Cas. & Sur. Co. v. Alfa Laval, Inc.*, 100 A.D.3d 451, 452 (1st Dep't 2012) (ordering the primary insurer to fund the policyholder's entire defense); *Am. Empire Surplus Lines Ins. Co. v. W. Am. Ins. Co.*,

No. 116334/07, 2008 N.Y. Misc. LEXIS 10724, *6-*7 (N.Y. Sup. Ct. Dec. 30, 2008) (holding that, although the policyholder had other insurance policies, the insurer had to fund its policyholder's entire defense); *Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co.*, No. 5:06-CV-1117 (GTS/DEP), 2010 WL 1257943, *1 (N.D.N.Y. Mar. 25, 2010) (ordering insurers to pay 100% of policyholder's defense fees and costs, including for uninsured periods).

Because the Insurers have a duty to defend under the Primary Policies, they collectively must fund all past and future defense fees and costs until exhaustion of the limits of liability of their respective Primary Policies.[1]  Although the Insurers may have the ability to allocate the total amount of defense fees and costs amongst themselves, they cannot allocate any portion to API.  *See, e.g.*, *Fulton*, 2010 WL 1257943, at *8.  As a result, the Court should declare that API is entitled to coverage for all of its defense costs, including the $4,772,757 in defense fees and costs incurred through October of 2017, as well as all defense fees and costs incurred in defense of the asbestos lawsuits thereafter under any triggered Primary Policies.[2]

### POINT III

### IN THE ALTERNATIVE, FEDERAL, AT A MINIMUM, HAS A DUTY TO DEFEND THE ASBESTOS LAWSUITS AND FUND ALL DEFENSE FEES AND COSTS

Federal also must provide a defense on behalf of API Basco, API AirTech, and API Heat Transfer because those entities are named insureds under its 1996 policy.  Federal's policy number 3530-67-00, covering April 1, 1996 through April 1, 1997, covers those three entities under the "Subsidiaries or Newly Acquired or Formed Organizations" provision:

> If there is no other similar insurance available, the following will qualify to be a named insured:

---

[1] It is undisputed that, to date, none of the Primary Policies has exhausted its limits of liability.

[2] API and the Insurers stipulated to $4,772,757 in defense fees and costs incurred in the asbestos lawsuits through October of 2017.  Budesheim Cert., Ex. "G."

> • Any financially controlled subsidiary of yours; or
>
> • *Any organization you newly* acquired or *formed during the policy period, other than a partnership, joint venture, or limited liability company, and over which you maintain ownership or majority interest.* This coverage is effective on the acquisition or formation date and is afforded only until the end of the policy period during which the acquisition or formation took place.

Dkt. No. 33-14 at FED24843-FED24844 (emphasis added). An "organization" (other than a partnership, joint venture, or limited liability company), then, qualifies as a "named insured" as long as it formed during Federal's policy period and API maintained "ownership or majority interest" over it. *Id.* As set forth below, the coverage grant is satisfied for all three entities and the exclusionary provision involving "other similar insurance" available to the newly formed "organization" does not apply.

**A.    API AirTech, API Basco, and API Heat Transfer Fall Within the Coverage Grant of the "Subsidiaries or Newly Acquired or Formed Organizations" Provision**

API AirTech, API Basco, and API Heat Transfer each were formed by API as wholly-owned subsidiary corporations in September 1996, during Federal's policy period. Budesheim Cert., Ex. "D" at Nos. 40, 41, and 42. API maintained its "ownership or majority interest" over them until it sold API Heat Transfer (the remaining entity after a series of corporate transactions) in 2002, years after the April 1, 1997 expiration of the Federal policy. Dkt. No. 33-7 at No. 22. As a result, they fall within the coverage grant of the "Subsidiaries or Newly Acquired or Formed Organizations" provision.

**B.    Federal Cannot Prove the Exclusion for "Other Similar Insurance Available" Applies**

The phrase "other similar insurance available," which limits coverage otherwise available to newly formed entities, effectively operates as an exclusion. *See Greater N.Y. Mut. Ins. Co. v Clark*, 205 A.D.2d 857, 858 (3d Dep't 1994) (finding limiting language "is in the nature of an

15

exclusion"). A policy exclusion must be specific, clear, narrowly construed, and enforced only when the insurer establishes the pertinent language is "subject to no other reasonable interpretation." *Essex Ins. Co. v. Grande Stone Quarry, LLC*, 82 A.D.3d 1326, 1328 (3d Dept. 2011). In short, insurers bear the burden to prove exclusions apply. *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984).

Federal cannot prove the applicability of this exclusionary phrase because there is no evidence in the record that there was any other similar insurance available to API Airtech, API Basco, and API Heat Transfer at the time those entities were formed in 1996. Budesheim Cert., Ex. "H" at Nos. 1-3. Interpretation of an exclusion, as with any other policy provision, is "a question of law for the court," *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2010), and insurance policies "must be interpreted according to common speech and consistent with the reasonable expectations of the average insured," *Cragg v. Allstate Indem. Corp.*, 17 N.Y.3d 118, 122 (2011). Under the plain and ordinary meaning of the word "similar," to implicate the exclusionary provision, such other available insurance necessarily must provide coverage for asbestos product liability claims and pay defense costs in addition to policy limits. If the other available insurance does not, it is not "similar" to the 1996 Federal policy, which does provide such coverage, and the exclusion does not apply.

There is simply no evidence in the record of any other insurance available to the three newly formed subsidiaries in 1996 providing coverage for asbestos liabilities and paying defense in addition to policy limits. There is no evidence of other policies purchased by API that would provide similar coverage to these subsidiaries, nor is there any evidence that these subsidiaries purchased their own insurance in 1996. Budesheim Cert., Ex. "H" at Nos. 1-3. It is Federal's burden to prove such other similar insurance was available, and Federal cannot adduce any

16

factual support to meet its burden.[3]  As a result, all three entities qualify as "named insureds" under the "Subsidiaries or Newly Acquired or Formed Organizations" provision.  As a triggered primary insurer, then, Federal must fund all defense fees and costs, including the $4,772,757 incurred through October of 2017 and all subsequent amounts.  *Rapid-Am.*, 80 N.Y.2d 640.

## POINT IV

### THE INSURERS MUST CONTRIBUTE TOWARD API'S PAST AND FUTURE ASBESTOS SETTLEMENTS AND JUDGMENTS

Finally, the Court should declare that the Insurers must contribute toward API's past and future settlements and judgments in the asbestos lawsuits as long as any of their Primary Policies have been triggered.[4]  As set forth previously, the Insurers' Primary Policies require them to pay damages API becomes "legally obligated to pay" because of "bodily injury."  Budesheim Cert., Ex. "A"; Ex. "E" at FFIC-API-0054033; and Dkt. No. 33-10 at FED24822.  Pursuant to New York law, each policy is "triggered by an injury-in-fact during the policy period."  *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1194 (2d Cir. 1995).  In the case of asbestos disease, "injury-in-fact recur[s] throughout the disease process, [and] all policies in effect at any time during that process are triggered."  *Id.* at 1197.  Thus, as long as the injuries began before

---

[3] On December 7, 2018, Federal served an expert report from insurance archaeologist David Mark Hatley that argued API Basco, API AirTech, and API Heat Transfer could have purchased liability insurance for the asbestos lawsuits during the term of Federal's policy.  As an insurance archeologist with no underwriting experience, Mr. Hatley lacks the qualifications to testify on the availability of asbestos coverage to those entities.  Moreover, Mr. Hatley provided no relevant documentary support for his opinions.  Mr. Hatley's expert report does not establish that other similar insurance was available to API Basco, API Airtech, and API Heat Transfer, nor does it suffice to create a factual dispute on which Federal can oppose summary judgment.  *See Knight*, 804 F.2d at 11-12 (finding that a party "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment").

[4] To date, no judgments have been entered against API in the asbestos lawsuits.

ME1 29463792v.5

the expiration of their respective Primary Policies, the Insurers must contribute toward settlements and judgments.

## CONCLUSION

For the reasons set forth herein, the Court should grant API's Motion for Summary Judgment and declare that the Insurers must defend and indemnify API for the asbestos bodily injury claims brought against it, past, present, and future.

By: *s/ Adam J. Budesheim*
      Adam J. Budesheim
      David C. Kane
      McCarter & English, LLP
      Worldwide Plaza
      825 Eighth Ave., 31st Fl.
      New York, NY 10019
      Phone: 212.609.6800
      Fax: 212.609.6921
      Attorneys for Plaintiff
      American Precision Industries, Inc.

DATED: July 10, 2020

ME1 29463792v.5