## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| AMERICAN PRECISION INDUSTRIES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> FEDERAL INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, and NORTH RIVER INSURANCE COMPANY, <br><br> Defendants. | **Dkt. No. 1:14-cv-01050-RJA-HKS** |

### PLAINTIFF AMERICAN PRECISION INDUSTRIES, INC.'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**McCarter & English, LLP**
Worldwide Plaza
825 Eighth Ave., 31st Fl.
New York, NY 10019
Phone: 212.609.6800
Fax: 212.609.6921
Attorneys for Plaintiff
American Precision Industries, Inc.

ME1 33816534v.1

## STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56(a)(1) of the United States District Court for the Western District of New York, Plaintiff American Precision Industries, Inc. ("API") submits the following Statement of Material Facts:

### A.    The Insurers' Primary Liability Policies

1.    North River Insurance Company ("North River") sold to API the following three-year primary policy:

| Number | Period | Per Occurrence Limit | Annual Aggregate Limit |
|---|---|---|---|
| ML-208455 | 12/31/1974-12/31/1977 | $300,000 | $300,000 |

Certification of Adam J. Budesheim ("Budesheim Cert."), Ex. "A."

2.    Fireman's Fund Insurance Company ("FFIC") sold the following four consecutive primary policies covering December 31, 1985 through April 1, 1989:

| Number | Period | Per Occurrence Limit | Annual Aggregate Limit |
|---|---|---|---|
| MXC 800705191 | 12/31/1985-12/31/1986 | $1,000,000 | $1,000,000 |
| MXC 800705191 | 12/31/1986-4/1/1987 | $1,000,000 | $1,000,000 |
| MXC 80079133 | 4/1/1987-4/1/1988 | $1,000,000 | $1,000,000 |
| MXC 80142927 | 4/1/1988-4/1/1989 | $1,000,000 | $1,000,000 |

Dkt. No. 33-5 at 3.

3.    Federal Insurance Company ("Federal") sold the following five consecutive primary policies covering the period from April 1, 1992 through April 1, 1997:

| Number | Period | Per Occurrence Limit | Annual Aggregate Limit |
|---|---|---|---|
| 3530-67-00 | 4/1/1992-4/1/1993 | $1,000,000 | $2,000,000 |
| 3530-67-00 | 4/1/1993-4/1/1994 | $1,000,000 | $2,000,000 |
| 3530-67-00 | 4/1/1994-4/1/1995 | $1,000,000 | $2,000,000 |
| 3530-67-00 | 4/1/1995-4/1/1996 | $1,000,000 | $2,000,000 |
| 3530-67-00 | 4/1/1996-4/1/1997 | $1,000,000 | $2,000,000 |

Dkt. No. 33-10 at FED04675-FED04676; No. 33-11 at FED04704 and FED04707; No. 33-12 at FED04743 and FED04752; No. 33-13 at FED04798; and No. 33-14 at FED04883.

4.      None of the Primary Policies contains an asbestos exclusion.  Budesheim Cert., Ex. A; Dkt. No. 33-5; Dkt. No. 33-10 at FED04675-FED04676; No. 33-11 at FED04704 and FED04707; No. 33-12 at FED04743 and FED04752; No. 33-13 at FED04798; and No. 33-14 at FED04883.

5.      North River and FFIC agreed to:

> . . . pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence . . .

Budesheim Cert., Ex. "A"; Ex. "E" at FFIC-API-0054033.

6.      Likewise, Federal agreed that:

> We will pay any damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract because of:
>
> > bodily injury or property damage caused by an occurrence; or personal injury or advertising injury to which this insurance applies.

Dkt. No. 33-10 at FED24822.

7.      The North River and FFIC policies state:

> . . . the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations are groundless, false, or fraudulent . . .

Budesheim Cert., Ex. "A"; Ex. "E" at FFIC-API-0054033.

8.      Likewise, the Federal policy states:

> We will defend any claim or suit against the insured seeking such damages.  We will pay in addition to the applicable limit of insurance the defense expense.

Dkt. No. 33-10 at FED24822.

9.      Federal's policy number 3530-67-00, covering April 1, 1996 through April 1, 1997,

covers those three entities under the "Subsidiaries or Newly Acquired or Formed Organizations"

provision:

> If there is no other similar insurance available, the following will
> qualify to be a named insured:
>
> • Any financially controlled subsidiary of yours; or
>
> • Any organization you newly acquired or formed during the policy
> period, other than a partnership, joint venture, or limited liability
> company, and over which you maintain ownership or majority
> interest.  This coverage is effective on the acquisition or formation
> date and is afforded only until the end of the policy period during
> which the acquisition or formation took place.

Dkt. No. 33-14 at FED24843-FED24844.

**B.      Corporate Background Relevant to the Asbestos Litigation and Insurance Coverage**

10.      API incorporated under New York law in 1947 and operated as a manufacturer of

industrial equipment, including, among other things, heat transfer products.  Dkt. No. 33-7 at No.

1.

11.      During the ensuing decades, API acquired other companies and formed numerous

divisions and brands, including the Basco and Air Technologies divisions, which were made part

of API's Heat Transfer Group.  Budesheim Cert., Ex. "B" at 116:22-117:8; Ex. "C."

12.      These brands and divisions were not separate corporate entities; they existed as part

of API.  Budesheim Cert., Ex. "B" at 87:16-22.

13.      For example, after API acquired a company called Basco Inc. in the early 1960s,

API merged Basco Inc. into itself in 1966 and, thereafter, operated Basco as a division of API (not

as a subsidiary or other separate corporate entity).  *See, e.g.*, Budesheim Cert., Ex. "C."

ME1 33816534v.1

14.     During September of 1996, API formed three new wholly-owned subsidiary corporations and gave these entities names very similar to its existing brands, divisions, and groups:  (1) API Airtech Inc. ("API Airtech"); (2) API Basco Inc. ("API Basco"); and (3) API Heat Transfer Inc. ("API Heat Transfer").  Budesheim Cert., Ex. "B" at 117:9-16; Dkt. No. 33-7 at Nos. 2-4.

15.     In early 1997, API conveyed assets to API Airtech and API Basco in exchange for all of their outstanding shares of stock to establish them as operating companies.  Dkt. No. 33-7 at Nos. 5 and 8.

16.     API never transferred any liabilities to API Airtech or API Basco in connection with those transactions or at any time thereafter.   Dkt. No. 33-7 at Nos. 6 and 9.

17.     Subsequently, API Heat Transfer, which also was a subsidiary of API at the time, purchased from API all of the shares of API Airtech, API Basco, and another entity named API Ketema Inc. ("API Ketema"), all of which became subsidiaries of API Heat Transfer.  Dkt. No. 33-7 at No. 13.

18.     API Heat Transfer then merged into API Airtech, with the surviving company adopting the name API Heat Transfer.  Dkt. No. 33-7 at 14-15.

19.     At the end of 1998, API Basco, API Ketema, and another company named API Schmid-Bretten Inc. merged into API Heat Transfer.  Dkt. No. 33-7 at No. 16.

20.     In 2002, API sold API Heat Transfer to a third party.  Dkt. No. 33-7 at No. 22.

21.     During the six years from the creation of API AirTech, API Basco, and API Heat Transfer in 1996 to their sale in 2002, API transferred only assets, not liabilities, to the three entities. Those three entities never had any liability for product claims arising from products manufactured before their formation in 1996, neither while they were subsidiaries of API nor after they were

sold to a third party.  The Insurers expressly acknowledged in briefing to this Court that API did

not transfer the asbestos liabilities to any of its three subsidiaries:

> It is undisputed that API did not transfer any asbestos liabilities to
> Heat Transfer, API AirTech, or API Basco.

Dkt. No. 33-1 at 2; Dkt. No. 35, and Dkt. No. 36.

## C.     The Asbestos Lawsuits

22.     Since 2003, more than seven hundred asbestos lawsuits have been filed alleging

bodily injury resulting from exposure to products manufactured or sold by API.  Dkt. No. 33-7 at

No. 31.

23.     Plaintiffs in the underlying asbestos cases mistakenly name as defendants API Heat

Transfer, API Basco, and API Airtech, instead of API (likely because of the similarity of these

entities' names to the former brands and divisions of API), but they allege injury from API

products for which API retained the liability.  Budesheim Cert., Ex. "D" at No. 32.

24.     As API's corporate representative, Dr. Timothy Greene, Ph.D., explained:

> A. So complaints in asbestos cases are highly imperfect…  so my
> understanding is, they got their product facts right.  Their captioning
> may not reflect it, but they got their product facts right.
>
> Q. So they may not be suing the right defendants; is that what you're
> saying?
>
> A. Entirely possible.  In fact, that's not – that's frequent across all
> of these 740 plus cases that we've had so far in API.  Is that, it's a
> never ending variety of ways to try and name the company.  But the
> facts of the claim and the products that the plaintiff or the decedent
> were involved with, that's determinative of who has the liability.

Dkt. No. 37-1 at 187:8-188:1.

ME1 33816534v.1

By: *s/ Adam J. Budesheim*
    Adam J. Budesheim
    David C. Kane
    McCarter & English, LLP
    Worldwide Plaza
    825 Eighth Ave., 31st Fl.
    New York, NY 10019
    Phone: 212.609.6800
    Fax: 212.609.6921
    Attorneys for Plaintiff
    American Precision Industries, Inc.

DATED: July 10, 2020