UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AMERICAN PRECISION INDUSTRIES, INC.,

            Plaintiff,

v.                                       **DECISION AND ORDER**
                                                 14-CV-1050

FEDERAL INSURANCE COMPANY,
FIREMAN'S FUND UNSURANCE COMPANY,
AND NORTH RIVER INSURANCE COMPANY,

            Defendants.

---

Plaintiff American Precision Industries, Inc. ("API" or "Plaintiff") brought this action seeking a declaratory judgment that Federal Insurance Company ("Federal"), Fireman's Fund Insurance Company ("Fireman's Fund"), and North River Insurance Company ("North River") (collectively, "the Insurers" or "Defendants") must defend and indemnify API in several hundred asbestos-related personal injury lawsuits ("Asbestos Lawsuits"), as well as reimburse API for all litigation costs it has already incurred with respect to those suits.  Dkt. 1.  The Insurers issued primary comprehensive general liability ("CGL") policies ("the Primary Policies") to API covering slightly more than half the time between December 31, 1974 and April 1, 1997.  Dkt. 89-45.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the case was referred to Magistrate Judge H. Kenneth Schroeder, Jr. for all pre-trial proceedings.  Dkt. 8.  On July 10, 2020, API filed a motion for summary judgment and the Insurers filed three joint motions for summary judgment.  Dkts. 87, 89-91.  In late August 2020, API filed a cross-

1

motion for summary judgment.  Dkt. 96.  In mid-October 2020, the Insurers filed a motion to strike API's recently filed reply in support of its cross-motion for summary judgment.  Dkt. 109.  On August 2, 2021, Magistrate Judge Schroeder issued a Report, Recommendation, and Order ("RR&O") concerning each of these motions.  Dkt. 113.

The RR&O recommends: (1) granting in part and denying in part API's motion for summary judgment; (2) denying the Insurers' joint motion for partial summary judgment on allocation and voluntary payments; (3) denying the Insurers' joint motion for summary judgment on the (a) named insured, (b) standing, and (c) contractual indemnity issues; (4) denying the Insurers' joint motion for summary judgment on statute of limitations grounds; and (5) granting in part and denying in part API's cross-motion for summary judgment.  Additionally, the RR&O denies the Insurers' motion to strike API's reply in support of its cross-motion for summary judgment.

On September 17, 2021, API filed timely objections to the RR&O.  Dkt. 117.  The objections are limited to the portion of the RR&O that recommends the Court deny the segment of API's motion for summary judgment that relies on the "Subsidiaries or Newly Acquired or Formed Organizations" provision of the April 1, 1996 CGL policy issued by Federal.

The Insurers also filed timely objections to the RR&O.  Dkt. 118.  They object on three distinct grounds, specifically: (1) insofar as API is the only named insured, but the Asbestos Lawsuits do not include API as a defendant, the Primary Policies are not triggered; (2) the language of the Primary Policies requires pro rata allocation of any required defense and indemnification; and (3) API's claims are time-barred.

On October 29, 2021, Federal filed a response in opposition to API's objections to the RR&O.  Dkt. 119.  Echoing the RR&O's determination, Federal argues that the Magistrate Judge's previous denial – via an April 2020 Decision and Order (Dkt. 86) – of API's motion for leave to file an amended complaint (Dkt. 72), which sought to add a new claim for coverage based on the "Subsidiaries or Newly Acquired or Formed Organizations" provision of the April 1, 1996 CGL policy issued by Federal, precludes API from asserting an argument based on that same theory at the summary judgment stage.

On November 1, 2021, API filed a response in opposition to the Insurers' objections to the RR&O.  Dkt. 120.  API argues that the Magistrate Judge correctly found that (1) the Asbestos Lawsuits are covered by the Primary Policies; (2) all sums allocation is required for both defense and indemnification; and (3) the Insurers' summary judgment motion based on the statute of limitations should be denied.

Oral argument took place on March 16, 2022.  Dkt. 130.  Two days later, the parties were directed to file responses to additional questions posed by the Court.  Dkt. 131.  Responses were filed, and the matter was deemed submitted.  Dkts. 132-36.

Pursuant to 28 U.S.C. § 636(b)(1)(C), to the extent that parties make timely and specific objections to a Magistrate Judge's Report and Recommendation, the standard of this Court's review is *de novo*.  *Id*.  The Court may also review a Magistrate Judge's pretrial Order where it has been shown to be clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A).

Upon due consideration of the arguments, and after careful review of the voluminous record, the Court first finds that the Magistrate Judge correctly denied the

3

Insurers' motion to strike (Dkt. 109) API's reply in support of its cross-motion for summary judgment (Dkt. 108), for the reasons set forth in the RR&O.  Dkt. 113, p. 22-24.  As such, this Court will not disturb that ruling.

Next, the Court adopts the Magistrate Judge's conclusion that API has standing to assert its own rights to coverage under the Primary Policies, for the reasons articulated in the RR&O.  *Id*., p. 6-9.

The Court also adopts the reasoning and recommendation of the Magistrate Judge as set forth in the RR&O with respect to the statute of limitations.  *Id*., p. 10-12.  The Court emphasizes that it is adopting the Magistrate Judge's finding that the Insurers failed to offer proof that they actually denied coverage more than six years prior to API initiating this action.  To argue, as the Insurers do, that API was aware that entities other than named insureds were not entitled to coverage more than six years prior to initiation of this lawsuit simply conflates this issue with the named insured argument, to which the Court turns now.

The Magistrate Judge determined that the extrinsic facts rule compels coverage because the Insurers knew that API retained all liability for third-party bodily injuries allegedly caused by exposure to the products it manufactured prior to the September 1996 formation of the relevant subsidiaries.[1]  *Id*. at 12-19.  The Insurers' jointly object to this recommendation, which the parties addressed extensively during oral argument.

---

[1] The complex corporate history of API need not be recounted again here, other than to note that beginning in the 1960s, Air Technologies and Basco were simply divisions of API, contained within API's Heat Transfer Group.  Dkt. 87-2, Ex. B.  In September 1996, three new corporations were formed with similar names – API AirTech Inc., API Basco Inc., and API Heat Transfer Inc.  *Id*.  All three corporations were subsidiaries of API, but no liabilities were conveyed to the newly formed entities.  *Id*.

4

This Court, however, adopts the determination, set forth in detail in the RR&O, that allowing plaintiffs in the Asbestos Lawsuits to control the scope of coverage by virtue of their own filed complaints would yield an unjust result precluded by *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61 (1991).  The scope of coverage is set forth in the Primary Policies; that is what the parties negotiated and what, accordingly, binds them.  Furthermore, API's complex corporate history is not easily navigable by third-party plaintiffs' counsel, and API asserts this common mistake was amplified by its strategic decision to not reveal that API itself retains liability.  The Insurers cannot escape their coverage obligations on this theory.

Proceeding to the crux of this matter, the Court rejects the Magistrate Judge's conclusion that the Insurers must provide indemnification on an all sums basis; however, it adopts the determination that all sums allocation is appropriate for defense costs.  Dkt. 113, p. 20-22, 24-26.  Allocation of long-tail claims is inherently complex, and clearly, the shadow of *In re Viking Pump, Inc.*, 27 N.Y.3d 244 (2016) looms large over the allocation issues in this case.  Despite the parties' extensive briefing on this issue, and the Court's independent efforts to uncover relevant post-*Viking Pump* case law, it appears this Court has the charmed distinction of deciding a matter of first impression.  Namely, this Court is tasked with determining whether certain language contained within the definitions of bodily injury in the Primary Policies, specifically pertaining to "death at any time," requires allocation of indemnity and defense on an all sums, as opposed to pro rata, basis.

This issue was first raised by Fireman's Fund and North River in their joint motion for partial summary judgment on allocation and voluntary payments.  Dkt. 89.  In their

memorandum, they emphasized that the general rule under New York law requires pro rata allocation of long-tail claim losses if the insurance policy language limits coverage to bodily injury or property damage that occurs "during the policy period," as do each of the Primary Policies.  Dkt. 89-45 (citing, among other case law, *Stonewall Ins. Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178 (2d Cir. 1995); *Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436 (S.D.N.Y. 2019); *Keyspan Gas E. Corp. v. Munich Reinsurance Am., Inc.*, 31 N.Y.3d 51 (2018); and *Consolidated Edison Co. v. Allstate Ins. Co.*, 98 N.Y.2d 208 (2002)).  As something of a corollary, Fireman's Fund and North River then argued that *Viking Pump* established that all sums allocation was "only" appropriate for indemnification in circumstances where the insurance policy contained "non-cumulation clauses or non-cumulation and prior insurance provisions." Dkt. 89-45, p. 16.

Fireman's Fund and North River also asserted that defense costs must likewise be apportioned on a pro rata basis, citing case law which generally relied on considerations of equity and efficiency in reaching this conclusion.  Dkt. 89-45 (citing, among other case law, *Danaher, 414 F. Supp. 3d 436*; *Avondale Indus., Inc. v. Travelers Indem. Co*., 774 F. Supp. 1416 (S.D.N.Y. 1991); and *Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640 (1993)).

In a brief fashioned as both an opposition to Fireman's Fund and North River's joint motion for summary judgment on allocation and in support of its own cross-motion for summary judgment, API argued that New York law compelled all sums allocation of both indemnity and defense costs in this case.  Dkt. 96-1.  API quoted *Rapid-American* for the proposition that the duty to defend requires a full defense regardless of whether

the covered occurrence also triggers defense obligations under another insurance policy, because the insured purchased "litigation insurance" in order to avoid any confusion over responsibility for defense costs. *Id*. at 14-15.  API also argued that the New York Court of Appeals has consistently exalted contract terms, and has even admonished the lower courts to "enforce [the agreements of parties to an insurance contract] without passing on the substance of them." *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 21 N.Y.3d 324, 334 (2013).

With respect to indemnification, API first noted that the Primary Policies all defined bodily injury as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom," or functionally equivalent language.  Dkt. 96-1 (citing Dkts. 89-15; 89-42; 89-43; 89-44; 90-13).[2]  API then argued that *Viking Pump* compels all sums allocation of indemnity here because the "death at any time" language extends the protections of the Primary Policies beyond each policy period, which is inconsistent with the theoretical basis of pro rata allocation of long-tail claims, just as with non-cumulation or continuing coverage clauses.  *See Id*. at 262 ("Pro rata allocation is a legal fiction designed to treat continuous and indivisible injuries as distinct in each policy period as a result of the 'during the policy period' limitation, despite the fact that the injuries may not actually be capable of being confined to specific time periods.").

To be sure, New York insurance law requires analysis and application of the relevant policy language in determining how to allocate indemnity and defense costs, as

---

[2] Although Federal did not join the motion API was responding to, API's cross-motion was directed against all Defendants.

7

opposed to simply exercising a general preference for pro rata or all sums allocation. *See, e.g., Keyspan*, 31 N.Y.3d at 58 ("the method of allocation is governed foremost by the particular language of the relevant insurance policy").  With respect to allocation of indemnity, this Court does not agree with API's position that the "death at any time" language contained within the definitions of bodily injury in the Primary Policies compels all sums allocation.

The insurance policy provisions that the New York Court of Appeals analyzed in *Viking Pump* differ significantly from the "death at any time" language at issue in the instant case.  In *Viking Pump*, certain policies contained a non-cumulation of liability provision, also referred to as an anti-stacking provision, which stated:

> If the same occurrence gives rise to personal injury . . . which occurs partly before and partly within any annual period of this policy, the[n] each occurrence limit and the applicable aggregate limit or limits of this policy shall be reduced by the amount of each payment made by [Liberty Mutual] with respect to such occurrence, either under a previous policy or policies of which this is a replacement, or under this policy with respect to previous annual periods thereof.

*Id*. at 252.

Similarly, the other relevant policies in *Viking Pump* contained a prior insurance and non-cumulation of liability provision, which set forth:

> It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess Policy issued to the Insured prior to the inception date hereof[,] the limit of liability hereon . . . shall be reduced by any amounts due to the Insured on account of such loss under such prior insurance.
>
> Subject to the foregoing paragraph . . . in the event that personal injury . . . arising out of an occurrence covered hereunder is continuing at the time of termination of this Policy the Company will continue to protect the Insured for liability in respect of such personal injury . . . without payment of additional premium.

8

*Id*. at 252-53.

The Court of Appeals ultimately determined that all sums allocation of indemnity was required in *Viking Pump* due to the presence of the non-cumulation clauses, because those particular "policy provisions *plainly contemplate* that multiple successive insurance policies can indemnify the insured for the same loss or occurrence." *Id*. at 261 (emphasis added).

In the matter before this Court, the Primary Policies do not contain non-cumulation provisions, and the "death at any time" language is a far cry from *Viking Pump*'s clearly articulated non-cumulation clauses.  First, the relevant language in this case does not explicitly refer to <u>any</u> other or additional policies.  Second, even if this Court were to presume that the parties contemplated potential interaction with other policies during their negotiations of the definition of bodily injury in each of the Primary Policies, which it does not,[3] the language at issue does not explain how any reductions of liability should occur, if at all, in the event of overlapping coverage by multiple policies.

Contrary to API's suggestion, the Court does not find that pro rata allocation of indemnity in this case would render the "death at any time" language of the Primary Policies surplusage.  Dkts. 96-1, p. 28; 108, p. 6.  Rather, pro rata allocation might serve to slightly complicate an already complex mathematical equation designed to actualize the policy language that the parties have agreed to be bound by.  For

---

[3] The Insurers have asserted that the definition of bodily injury operative in the Primary Policies has been standard language in CGL policies since the mid-1960s. Dkt. 118, p. 25.  API does not dispute this point.  *See generally* Dkt. 120.

example, the classic time-on-the-risk formula[4] could be modified to include a secondary level pro rata allocation of liability attributed to wrongful death claims, so that each insurer on the risk during the pendency of the injury would be held liable for the damages associated specifically with the death.  While this is certainly not the simplest method of allocation, the Court is not at liberty to disregard the Primary Policy provisions for the sake of expediency.

Moreover, as noted in both Fireman's Fund and North River's reply in support of their joint motion for partial summary judgment on allocation and the Insurers' joint objections to the RR&O, an amicus brief in *Viking Pump* raised this precise issue, arguing that the "death at any time" language of the bodily injury definitions required all sums allocation.  Dkts. 103, p. 14-15; 118, p. 25.  Respondent insurers in *Viking Pump* disputed this contention, citing a 2013 Massachusetts appellate court case which found that "[t]he bodily injury definition simply sets forth the unremarkable proposition . . . that in the typical case where the time of injury is easily determined, the policy in place when the injury occurs will cover all consequential damages, even those taking place after the policy period."  *New England Insulation Co. v. Liberty Mut. Ins. Co.*, 988 N.E.2d 450, 454 (2013).

The Appeals Court of Massachusetts concluded that the "death at any time" language in the policies did not compel all sums allocation of indemnity in the case before it.  Notably, that case also concerned third-party asbestos bodily injury claims,

---

[4] The Second Circuit has defined the time-on-the-risk approach as requiring multiplication of "the judgment or settlement by a fraction that has as its denominator the entire number of years of the claimant's injury, and as its numerator the number of years within that period when the policy was in effect*." Stonewall*, 73 F.3d at 1202.

and plaintiff insured had explicitly likened the "death at any time" language in the definitions of bodily injury to non-cumulation clauses. Nevertheless, the Court opined that non-cumulation clauses were "an express agreement" and accordingly were easily distinguishable from the "death at any time" language. *Id*. at 455 n. 13.

Similarly, the New York Court of Appeals declined to broaden its *Viking Pump* ruling to state that the standard definition of bodily injury required all sums allocation of indemnity. While this Court agrees with API's contention that the *Viking Pump* decision did not explicitly reject or analyze this issue (Dkt. 120, p. 21), it nevertheless finds that the Court of Appeals could have easily incorporated this position if it had actually intended to modify New York long-tail claims allocation law in such a drastic way. Instead, the *Viking Pump* Court chose to rely on the non-cumulation clauses to support its conclusion that all sums allocation of indemnity was required.

As this Court has determined that pro rata allocation must be applied to indemnification in the instant case, it must also consider Fireman's Fund and North River's argument that API is responsible for indemnification attributed to periods that it went without insurance coverage. Dkt. 89-45, p. 16-18. The Court has not identified any reason, based on a review of the pertinent Primary Policy language and case law, why API should not be considered on-the-risk for non-coverage periods.

As previously noted, the foundation for pro rata allocation is the "during the policy period" language contained within the Primary Policies. As the New York Court of Appeals aptly reasoned in *Keyspan*, "to allocate risk to the insurer for years outside the policy period would be to ignore the very premise underlying pro-rata allocation." *Id*. at 61. In its decision assigning a pro rata share of indemnity to the insured, the Court of

11

Appeals also noted that not requiring pro rata contribution from the insured "would contravene the reasonable expectations of the average insured, who would not expect to receive coverage without regard to the number of years for which it purchased applicable insurance." *Id*.  This Court agrees.

Turning next to allocation of defense costs, as both sides cited *Rapid-American* in support of their arguments, the Court's analysis will begin there.  It is true that the New York Court of Appeals has held, as noted by Fireman's Fund and North River in their joint motion for partial summary judgment on allocation, that when multiple policies are triggered by a particular claim, "pro-rata sharing of defense costs *may* be ordered." Dkt. 89-45, p. 18 (citing *Rapid-American*, 80 N.Y.2d at 655) (emphasis added).  It is also true that same decision held that:

> . . . the duty to defend is broader than the duty to pay, requiring each insurer to defend if there is an asserted occurrence covered by its policy, and the insured should not be denied initial recourse to a carrier merely because another carrier may also be responsible. That is the "litigation insurance" the insured has purchased.

*Id*.  Perhaps most significantly, the *Rapid-American* Court stated that when multiple policies are triggered by a particular claim, there was "no error or unfairness in declining to order [pro rata] sharing, with the understanding that the insurer may later obtain *contribution from other applicable policies*." *Id*. at 655-56 (emphasis added).

Put another way, API is entitled to a full defense pursuant to the Primary Policies, whereas "whatever obligations or rights to contribution may exist between two or more insurers . . . flow from equitable principles." *Md. Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 211 (2d Cir. 2000).

As previously discussed, New York law requires adherence to policy terms, and equitable principles cannot serve to modify explicitly agreed upon contract provisions. As such, API has the stronger argument on allocation of defense costs.

Fireman's Fund and North River relied heavily on the relatively recent *Danaher Corp.* case for support of their position that pro rata allocation of defense is appropriate in the instant case. However, that non-binding Southern District of New York decision appears to have relied on considerations of equity and efficiency rather than analyzing the issue with a primary focus on the policy language itself. Furthermore, to arrive at its conclusion that the insured must contribute to defense costs on a pro rata basis, *Danaher* itself relied on the reasoning of a Sixth Circuit decision, *Insurance Co. of North America v. Forty-Eight Insulations*, 633 F.2d 1212 (6th Cir. 1980), which pre-dates *Rapid-American*.

In light of the fact that no binding precedent requires this Court to allocate defense costs on a pro rata basis, and because the plain language of the Primary Policies requires the Insurers to pay all costs and expenses that arise from defending any claim or suit which seeks damages on account of a covered occurrence, all sums allocation of defense costs is required in this case.

Switching gears now to API's objection concerning its argument in the alternative, that the three subsidiaries created in September 1996 – API Basco Inc., API AirTech Inc., and API Heat Transfer Inc. – qualify for coverage under the "Subsidiaries or Newly Acquired or Formed Organizations" provision of Federal's April 1, 1996 policy, the Court agrees with the RR&O that summary judgment should be denied on this ground. The Court finds that the Insurers have been deprived of a full and fair

13

opportunity to explore this issue in discovery insofar at this argument is not alluded to in API's Complaint. Furthermore, the Magistrate Judge previously denied API's request to amend the Complaint in this manner, finding the amendment was untimely and prejudicial. Dkt. 86. As such, this issue is not ripe for summary judgment.

If the issue were properly before the Court at this stage, the Magistrate Judge's recommendation would require modification, insofar at the Court recognizes that enforceable policy exclusions must be specific and only subject to one reasonable interpretation. *See, e.g., Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984). Because the Insurers did not meet their burden in this regard, the exclusion cannot be applied in this case.

However, this issue is not ripe and furthermore, it is unclear whether API has standing to assert claims for coverage as to its three former subsidiaries.

On the issue of payments that API has already made in settlement of certain of the Asbestos Lawsuits (also referred to in this matter at the issue of voluntary payments), the Court adopts the Magistrate Judge's conclusion that API is entitled to indemnification, on a pro rata basis, for the reasons articulated in the RR&O. Dkt. 133, p. 27-28.

Finally, with respect to the Insurers' argument that API is not entitled to coverage on a contractual indemnity theory, this appears to be moot as API has not raised such an argument and the parties' objections do not encompass this issue.

Accordingly, it is hereby

ORDERED that the RR&O is ADOPTED in part, REJECTED in part, and MODIFIED in part, consistent with the foregoing; and more specifically it is

ORDERED that Defendants' motion to strike (Dkt. 109) Plaintiff's reply in support of its cross-motion for summary judgment is DENIED; and it is

ORDERED that Defendants' joint motion for summary judgment on the (1) named insured, (2) standing, and (3) contractual indemnity issues (Dkt. 90) is DENIED; and it is

ORDERED that Defendants' joint motion for summary judgment on statute of limitations grounds (Dkt. 91) is DENIED; and it is

ORDERED that Fireman's Fund and North River's joint motion for partial summary judgment on allocation and voluntary payments (Dkt. 89) is GRANTED, in part, as to their argument that pro rata allocation of indemnity is required in this case, and DENIED as to their arguments that pro rata allocation of defense costs is required, and that Plaintiff's voluntary payments place them outside the scope of coverage; and it is

ORDERED that Plaintiff's motion for summary judgment (Dkt. 87) is GRANTED, in part, as to its arguments that the Primary Policies require Defendants to defend the Asbestos Lawsuits and contribute to past and future indemnification, and DENIED, in part, as to its alternative argument concerning newly formed subsidiaries; and it is

ORDERED that Plaintiff's cross-motion for summary judgment (Dkt. 96) is GRANTED, in part, as to its arguments that Defendants are required to defend the Asbestos Lawsuits on an all sums basis, without future contribution from Plaintiff, and DENIED, in part, as to its argument that indemnification must be allocated on an all sums basis; rather, indemnification of both the previously settled claims and all future settlements and judgments must be allocated on a pro rata basis; and it is

ORDERED that the matter is remanded to Magistrate Judge H. Kenneth Schroeder, Jr. for further proceedings.

**IT IS SO ORDERED**.

                                                 _s/Richard J. Arcara_
                                                 HONORABLE RICHARD J. ARCARA
                                                 UNITED STATES DISTRICT COURT

Dated: December 21, 2022