UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

AMERICAN PRECISION INDUSTRIES, INC.,

           Plaintiff,

  v.                                       **DECISION AND ORDER**
                                                    14-CV-1050

FEDERAL INSURANCE COMPANY,
FIREMAN'S FUND UNSURANCE COMPANY,
AND NORTH RIVER INSURANCE COMPANY,

           Defendants.
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

      Plaintiff American Precision Industries, Inc. ("API" or "Plaintiff") brought this action seeking a declaratory judgment that Federal Insurance Company ("Federal"), Fireman's Fund Insurance Company ("Fireman's Fund"), and North River Insurance Company ("North River") (collectively, "the Insurers" or "Defendants") must defend and indemnify API in several hundred asbestos-related personal injury lawsuits ("Asbestos Lawsuits"), as well as reimburse API for all litigation costs it has already incurred with respect to those suits.

      In a Decision and Order dated December 21, 2022 (the "Prior Order"), the Court, amongst other things, denied various motions for summary judgment that were filed jointly by Defendants, including an argument based on their named insured theory; granted Fireman's Fund and North River's joint motion for partial summary judgment on allocation and voluntary payments as to their argument that pro rata allocation of

indemnity is required and denied the motion as to their arguments that pro rata allocation of defense costs is required and that Plaintiff's voluntary payments placed them outside the scope of coverage; and granted Plaintiff's cross-motion for summary judgment as to its argument that Defendants are required to defend the Asbestos Lawsuits on an all sums basis, and denied the motion as to the argument that indemnification must be allocated on an all sums basis.

On January 5, 2023, North River and Fireman's Fund moved to amend the Prior Order to certify questions pertaining to the named insured issue and the allocation of defense costs for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Shortly thereafter, Federal filed a motion for leave to join the motion to amend.  Plaintiff API filed a brief fashioned as both an opposition to the motion to amend and a cross-motion to amend the Prior Order to certify a question regarding the allocation of indemnity pursuant to 28 U.S.C. § 1292(b).  Federal's motion to join is hereby GRANTED, and for the reasons set forth below, the motions to amend the Prior Order are GRANTED.

## BACKGROUND

The Court assumes familiarity with the history of this litigation, the Prior Order, and the pending motions; however, it will briefly summarize for the convenience of the reader.  The Defendant Insurers issued primary comprehensive general liability ("CGL") policies ("the Primary Policies") to Plaintiff API covering slightly more than half the time between December 31, 1974 and April 1, 1997.  The Asbestos Lawsuits allege third-party bodily injuries, including hundreds of deaths, resulting from pre-1996 exposure to asbestos products, such as heat exchangers, which were manufactured and/or sold by

API.  Between 2002 and October 2017, at least 769 Asbestos Lawsuits had been filed.  Only one of those Asbestos Lawsuits named API as a defendant.

API was incorporated in 1947 and has a complex corporate history.  Of particular salience is the evolution of Heat Transfer because that entity and Danaher Corporation are generally named as defendants in the Asbestos Lawsuits.  Prior to September 1996, Heat Transfer was a group within API, itself further comprised of divisions, including Air Technologies and Basco.  In September 1996, Heat Transfer became a subsidiary of API.  It is of paramount significance that no liabilities were conveyed from API to the Heat Transfer subsidiary.  In 2000, Danaher Corporation acquired API but likewise did not assume any liabilities.

The Primary Policies do not contain asbestos exclusions.  Although there are minor differences in language and coverage, the Primary Policies all provide that Defendants have a duty to defend any suit against the insured seeking damages on account of bodily injury.  Further, the Primary Policies all define "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom," or functionally equivalent language.

Amongst other arguments set forth in their joint motions for summary judgment, Defendants asserted that API was not entitled to any coverage under the Primary Policies because it was the sole named insured but was not a named defendant in the Asbestos Lawsuits.  The Court adopted the Magistrate Judge's recommendation to deny Defendant's motion on this ground, stating that in light of extrinsic facts known to the Defendants – namely, that API had retained liability – the policy language compelled

coverage, regardless of which entities were named within the four corners of the complaints filed in the Asbestos Lawsuits.

The Court also adopted the Magistrate Judge's recommendation to grant Plaintiff's cross-motion for summary judgment as to its argument that Defendants are required to defend the Asbestos Lawsuits on an all sums basis, otherwise known as joint and several allocation, as well as his corresponding recommendation to deny Fireman's Fund and North River's joint motion for partial summary judgment on the argument that pro rata allocation of defense costs is required.  This Court found that the Primary Policies required Defendants to pay all costs and expenses arising from the defense of any claim or suit which seeks damages on account of a covered occurrence. Additionally, the Court found *Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436 (S.D.N.Y. 2019) inapt, and therefore determined that while contribution could later be sought amongst the insurers, claims for future contribution from Plaintiff were barred.

Finally, as relevant here, the Court rejected the Magistrate Judge's recommendation to deny Fireman's Fund and North River's joint motion for partial summary judgment on their argument that pro rata allocation of indemnity is required, and his corresponding recommendation to grant Plaintiff's cross-motion for summary judgment as to its argument that Defendants must indemnify on an all sums basis.  In rejecting Plaintiff's argument, which relied heavily on the New York Court of Appeals decision *In re Viking Pump, Inc.*, 27 N.Y.3d 244 (2016), this Court found that the "death at any time" language contained in the Primary Policies' definitions of bodily injury was distinguishable from the non-cumulation clauses relevant in *Viking Pump* because those latter "policy provisions *plainly contemplate[d]* that multiple successive insurance

policies [could] indemnify the insured for the same loss or occurrence." *Id*. at 261 (emphasis added).  Accordingly, the Court rejected what it viewed as the false dichotomy API presented of either the "death at any time" language requiring all sums allocation of indemnity or that same contract language being rendered surplusage.

<u>The Instant Motions</u>

Defendants move pursuant to 28 U.S.C. § 1292(b) to amend the Prior Order to certify for interlocutory appeal questions pertaining to the named insured issue and the allocation of defense costs.  Plaintiff filed a brief opposing the motion to amend and cross-moving to amend the Prior Order to certify a question regarding the allocation of indemnity pursuant to 28 U.S.C. § 1292(b), but only if the Court certifies either or both of the questions proposed by Defendants.

Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

## DISCUSSION

Interlocutory appeals are strongly disfavored in federal practice.  A party seeking certification bears the burden of demonstrating that the requirements of § 1292(b) are met, but even if the party meets its burden, "district courts should only grant leave for an

interlocutory appeal after 'exercising great care.'" *Stratton v. Wallace*, 11-CV-74, 2016 WL 3552147, at *2 (W.D.N.Y. Apr. 5, 2016) (quoting *Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992).

A district court may certify an order for interlocutory appeal if the movant establishes "that the order (1) 'involves a controlling question of law' about which (2) 'there is substantial ground for difference of opinion,' and (3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 14-MD-2589, 2019 WL 3202745, at *1 (S.D.N.Y. July 16, 2019) (quoting 28 U.S.C. § 1292(b)). Furthermore, "only 'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)).

If all three elements of § 1292(b) have been established, the certification decision is still "entirely a matter of discretion for the district court." *In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 36 (2d Cir. 2014). However, "[w]hen a ruling satisfies these criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)).

1. <u>Controlling Question</u>

"Courts in this Circuit typically evaluate whether a controlling question of law exists by considering whether either (1) 'reversal of the district court's opinion could

result in dismissal of the action'; (2) 'reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action,' or (3) 'the certified issue has precedential value for a large number of cases.'" *Green v. Humana at Home, Inc.*, 16-CV-7586, 2019 WL 3729390, at *3 (S.D.N.Y. Aug. 8, 2019) (quoting *In re A2P SMS Antitrust Litig.*, 12-CV-2656, 2015 WL 876456, at *3-4 (S.D.N.Y. Mar. 2, 2015)).  Courts also require that a controlling question of law present "a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record."  *United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*, 521 F.Supp.3d 265, 275 (E.D.N.Y. 2021) (citing *Fairbank Recons. Corp. v. Greater Omaha Packing Co., Inc.*, 13-CV-907, 2020 WL 7427025, at *4 (W.D.N.Y. Dec. 18, 2020)).

    a. Named Insured

Defendants argue that a ruling in their favor on this issue would terminate the litigation.  API disputes this contention, but agrees that it is a controlling question of law, presumably on the grounds that it could significantly affect the remainder of the action.  This Court agrees the first element of § 1292(b) has been satisfied as to this pure question of law.

    b. Allocation of Defense Costs

Next, Defendants assert that a ruling in their favor on this issue, which does not involve any disputed facts, would reduce the duration, scope, and expense of proceedings before this Court.  Again, Plaintiff concedes that the issue is a controlling question of law, and this Court agrees this element of § 1292(b) has been satisfied because a decision on appeal could significantly impact the conduct of this case.

  c. Allocation of Indemnity

Plaintiff argues that this issue is not clouded by any disputed facts, and that it has a direct impact on the responsibility of Defendants to cover indemnification as well as whether API can be required to contribute thereto.  In reply to Plaintiff's cross-motion, North River and Fireman's Fund do not directly respond to whether this issue is a controlling question of law; rather, they assert that the value of indemnification in this case is so insignificant as to be *de minimis*.  This Court finds that the issues of allocation of defense and indemnification are closely related and agrees with Plaintiff that it would make little sense to certify one question and not the other as both must be resolved to reduce the duration and expense of this action.  Accordingly, the Court finds that the first element of § 1292(b) has been satisfied as to this pure question of law.

 2. <u>Substantial Ground for Difference of Opinion</u>

As noted in Defendants' joint memorandum, a substantial ground for difference of opinion exists when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit."  *Pen Am. Ctr., Inc. v. Trump*, 18-CV-9433, 2020 WL 5836419, at *2 (S.D.N.Y. Oct. 1, 2020) (quoting *Whyte v. Wework Companies, Inc.*, 20-CV-1800, 2020 WL 4383506, at *1 (S.D.N.Y. July 31, 2020).

The Second Circuit has stated that "the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion."  *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996).  However, the Circuit has since clarified that when the other elements of § 1292(b) have been established and the question "involves a new legal question or is of special

consequence, then the district court should not hesitate to certify an interlocutory appeal." *Balintulo*, 727 F.3d at 186.

    a. Named Insured

Defendants assert that this issue presents new legal questions – specifically, whether – and if so, when – policy obligations are triggered by third-party lawsuits that do not name as a defendant the insured or its successors, assigns, or alter egos.  The Court's Prior Order relied on the New York Court of Appeals case *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61 (1991) to reach its conclusion, but Defendants argue even that case required the defendant to have been named in the third-party complaint, albeit in the wrong role, which is how that coverage dispute arose.

In response, Plaintiff states that Defendants have misconstrued the holding of *Fitzpatrick*, wrongly narrowing it to assert that coverage cannot be denied to a named defendant whose role was simply misidentified in the third-party complaint.  Plaintiff contends the Court of Appeals focused on the underlying event, rather than the named defendants, to determine who was liable for the alleged wrongdoing, thereby triggering coverage.  Additionally, Plaintiff asserts that Defendants were unable to identify any conflicting authority on this issue because it is settled New York law.

After analyzing the strength of Defendants arguments, this Court concludes Defendants have satisfied their burden as to the second element.  Defendants' memorandum notes that before the Prior Order was issued, "no court had ever held that New York law requires coverage for an entity not actually named as a defendant to a case." Dkt. 138-1 at 15-16.  The issues are of first impression in the Second Circuit and surely, they rise to the level of special consequences as they could significantly expand

the scope of coverage insurers must provide. While the Court finds the logic of *Fitzpatrick* to be clear, it is also cognizant that its application of said logic to the facts of this case stretched the Primary Policies' language, which states that Defendants "shall have the right and duty to defend any suit against the insured seeking damages . . .," rather thin.

      b.  Allocation of Defense Costs

Defendants assert that this issue is one of first impression in the Western District of New York, and therefore of substantial import and precedential value. Specifically, they argue that the Prior Order renders them responsible for the defense of claims for which there is no concomitant indemnity obligation, in contravention of the policy language. They rely on the unreported case *Mt. McKinley Ins. Co. v Corning Inc.*, 602454/02, 2012 N.Y. Slip Op. 33555(U) (N.Y. Sup. Ct., Sept. 7, 2012), to which North River was a party, noting that court determined pro rata allocation of defense fees was required because the all sums alternative would "force an insurer to pay for that portion of the defense costs attributable to [the insured] (for periods when it chose to self-insure) and to an insolvent primary level insurer." Dkt. 138-1 at 18.

They also cite *Columbus McKinnon Corp. v. Travelers Indem. Co.*, 367 F. Supp. 3d 123 (S.D.N.Y. 2018) arguing that post-*Viking Pump*, courts applying New York law still require pro rata allocation of defense when indemnity coverage is limited to injuries during the policy period. Additionally, Defendants point to *National Hockey League v. TIG Ins. Co.*, 76 Misc.3d 427 (S. Ct., New York County 2022) for evidence that New York State courts agree that insurers cannot be required to pay defense costs for occurrences which took place outside of their policy periods. That court found it would

"subvert the contracts and obviate the NHL's obligation to cover the defense costs 'allocable to any years in which [it] went without coverage.'" *Id*. at 436 (citing *Danaher*, 414 F. Supp. 3d at 454).

Finally, Defendants assert that the portion of the Prior Order preventing Defendants from seeking future contribution from Plaintiff for defense costs "contravenes Second circuit caselaw," and cite only *Olin Corp. v. Insurance Co. of North America*, 221 F.3d 307 (2d Cir. 2000) for support.

Plaintiff argues that decisions issued by other federal district courts and New York State trial courts cannot be a substantial basis for difference of opinion on the issue. Moreover, it points out that the policy language does not say that the insurers will "defend that **portion** of a claim to which the insurance applies." Dkt. 142-1 at 9 (emphasis in original). This point is particularly meaningful against the backdrop of *Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640 (1993), wherein the New York Court of Appeals determined that the duty to defend was broader than the duty to indemnify. Plaintiff also asserts that "[i]t is an indisputable tenet of New York law that an insurer with a duty to defend must defend an entire claim, even if it alleges both covered and uncovered claims." Dkt. 142-1 at 15 (citing *Frontier Ins. Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 91 N.Y.2d 169 (1997).

Additionally, Plaintiff notes that many of the cases relied on by Defendants, including *Olin Corp.*, do not address allocation of defense at all; rather, they focus their analysis on allocation of indemnity. With respect to *Mt. McKinley*, Plaintiff argues that court deemed the contract language non-dispositive, and therefore relied on equitable considerations in allocating defense costs. Because that court found the insured had

"elected, but ma[d]e[ ] no argument that it ha[d] been forced, to self-insure certain risks and amounts during relevant time periods," it found all sums allocation of defense would provide a benefit to the insured that had not been bargained for.  Plaintiff reminds the Court that in the instant case, there have been no admissions or factual findings that it elected to forego insurance during the relevant period.[1]

This Court has exercised great care in evaluating the arguments made by the parties.  Although it agrees with Plaintiff that there is no controlling precedent in conflict with its Prior Order on this issue, it does find conflicting authority on the issue exists.  Furthermore, it finds this question is of special consequence as a difficult matter of first impression in the Western District of New York.  The Court finds it is also of special consequence because there is a paucity of relevant caselaw outside the district to provide guidance on the issue.  Accordingly, this Court concludes that the second element of § 1292 has been met with respect to this issue.

       c.  Allocation of Indemnity

Plaintiff argues that the effect of the "death at any time" language on allocation of indemnity is an issue of first impression in the Second Circuit.  It asserts that this Court incorrectly restricted application of the principles of *Viking Pump*, which it argues readily apply to policy provisions other than non-cumulation and continuing coverage clauses.  Specifically, it resuscitates its argument that the "death at any time" language would be rendered surplusage under pro rata allocation, as subsequent deaths would be allocated to the policy period in which they occurred.

---

[1] The Court notes, however, that for significant periods during the relevant timeframe, API was covered by insurers that are now insolvent.  *See, e.g.*, Dkt. 90-1 at ¶¶ 73-79.

In addition, Plaintiff brings two cases to the Court's attention as the only existing authorities that Plaintiff is aware of addressing this question: one issued by a California court and another by a federal district court in California, both applying New York law. Plaintiff asserts both courts reached the conclusion that "death at any time" language was inconsistent with pro rata allocation in the wake of *Viking Pump*. *See Cannon Electric, Inc. v. Ace Property & Casualty Co.*, 2017 Cal. Super. LEXIS 8981 (Aug. 17, 2017); *POLAR-Mohr Maschinenvertriebsgesellschaft GmbH & Co. KG v. Zurich Am. Ins. Co.*, 2018 U.S. Dist. LEXIS 42955, (N.D. Ca. Mar. 15, 2018). Finally, Plaintiff contends that this Court improperly relied on *New England Insulation Co. v. Liberty Mut. Ins. Co.*, 83 Mass. App. Ct. 631 (2013) insofar as the Massachusetts Supreme Judicial Court had already expressed a preference for pro rata allocation prior to that decision being rendered.

In response, North River and Fireman's Fund assert that there have been no New York cases which have adopted API's argument on the "death at any time" language. They cite *Liberty Mut. Fire Ins. Co. v. J&S Supply Corp.*, 2017 U.S. Dist. LEXIS 162910 (S.D.N.Y. Sept. 29, 2017) as evidence that pro rata allocation is appropriate in the context of insurance litigation involving the "death at any time" provision, despite *Viking Pump*. Specifically, they argue the *J&S* Court distinguished *Viking Pump* from the case before it based on the presence of non-cumulation and prior insurance provisions in the *Viking Pump* policies.

The issue of allocation of indemnification is not only particularly difficult, but as with the allocation of defense costs issue, there is little relevant caselaw examining it. In the Court's analysis of this issue in its Prior Order, it specifically noted that it was

deciding a matter of first impression.  Moreover, the cases relied on by the parties in their briefs to amend the Prior Order underline that conflicting authority on the issue exists.  Finally, this issue is of special consequence.  This is because the "death at any time" language has been standard in CGL policies for several decades, which means a determination that such language forecloses the application of pro rata allocation of indemnity would essentially preclude pro rata indemnity allocation in all long-tail claims applying New York law going forward.  Since this Court finds substantial grounds for difference of opinion as to whether *Viking Pump* intended to do just that, it concludes that Plaintiff has met its burden as to this second element.

3. <u>Materially Advance the Ultimate Termination of the Litigation</u>

Application of § 1292(b) is reserved for cases where "an immediate appeal may avoid protracted litigation."  *Koehler v. Bank of Bermuda*, 101 F.3d 863, 866 (2d. Cir 1996).  Moreover, although the question of whether there is a controlling issue of law is distinct from this question of whether certification would materially advance the ultimate termination of the litigation, "in practice the two questions are closely connected."  *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000).

a. Named Insured

As previously noted, Defendants argue that a ruling in their favor on this issue would absolve them from covering defense costs and indemnification pertaining to the Asbestos Lawsuits.  API disagrees, asserting that it was previously named in one Asbestos Lawsuit and could be so named in the future, therefore its request for declaratory judgment would not be moot even if the Second Circuit found in Defendants' favor on this issue.  Because interlocutory appeal of this issue may avoid protracted

litigation by significantly limiting the scope of this case, this Court finds the final element of § 1292(b) has been satisfied.

    b. Allocation of Defense Costs

Defendants argue that appellate reversal on this issue would streamline the remainder of the case. They also contend the litigation will necessarily be expanded under all sums allocation of defense because whichever insurer Plaintiff collects coverage from will amend its Answer to assert cross-claims against the other insurers for contribution. Finally, Defendants opine that a ruling from the Second Circuit could facilitate settlement.

Plaintiff responds that the instant litigation is not the forum for the Insurers to resolve future claims for contribution, and that any such amendment should be barred.

Bearing in mind that the matter is only theoretical at this juncture, the Court does not agree with Plaintiff that such amendment of the pleadings would be categorically barred. As such, this Court finds that immediate appeal of this issue may avoid prolonged litigation and finds Defendants have met their burden as to this third element.

    c. Allocation of Indemnity

Plaintiff asserts that interlocutory appeal of the named insured and defense cost allocation issues will not advance the ultimate resolution of this case unless the allocation of indemnity issue is similarly resolved. North River and Fireman's Fund do not respond directly; rather, as noted above, they assert that the value of indemnification is *de minimis* and therefore does not warrant burdening the Second Circuit. Because the issues of allocation of defense and indemnification are closely related, this Court finds that both must be resolved to avoid protracted litigation. As

such, this Court finds that the third element of § 1292(b) has been satisfied as to this issue.

## CONCLUSION

For the reasons set forth above, the Court concludes that certification of these three issues for interlocutory appeal is appropriate under the framework of 28 U.S.C. § 1292(b).  Furthermore, the Court finds that exercising its discretion to allow certification is appropriate under the circumstances of this case.

Accordingly, Federal's motion (Dkt. 141) to join Fireman's Fund and North River's joint motion (Dkt. 138) to amend the Prior Order (Dkt. 137) is GRANTED; and

Defendants' joint motion (Dkt. 138) to amend the Prior Order is GRANTED.  The Prior Order is deemed amended to certify the following questions for immediate review:

(1) Whether – and if so, when – policy obligations are triggered by third-party lawsuits that do not name as a defendant the insured or its successors, assigns, or alter egos, but where the insurers have notice that the insured retained liability for the harms alleged in the third-party suits; and

(2)  Whether insurers can be required to pay defense costs for long-tail claims on an all sums basis where the policy language limits indemnification to harms occurring during the policy period.

Additionally, Plaintiff's cross-motion (Dkt. 142) to amend the Prior Order is GRANTED.  The Prior Order is deemed amended to also certify the following question for immediate review:

(1) Whether *Viking Pump* precludes pro rata allocation of indemnification where the insurance policy definition of bodily injury includes "death at any time" language.

Finally, the parties shall notify the Court when the Second Circuit either declines to accept these questions for interlocutory review or when it reaches decisions on the merits of the certified questions.

**IT IS SO ORDERED**.

_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: November 20, 2023